IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

```
BROTHELLA QUICK, BQ ENTERPRISES,   )
INC., and CRYSTAL CLEAR            )
COMPASSIONATE CARE, INC.           )
                                   )
           PLAINTIFFS,             )
                                   )
v.                                 )  NO:1:19-cv-7797
                                   )
ILLINOIS DEPARTMENT OF FINANCIAL   )  Hon. Judge Mary M. Rowland
AND PROFESSIONAL REGULATION        )  Mag. Judge M. David Weisman
                                   )
and                                )
                                   )
BRETT BENDER, DEPUTY DIRECTOR OF   )
MEDICAL CANNABIS,                  )
                                   )
and                                )
                                   )
AS YET UNKNOWN DEFENDANTS,         )
                                   )
           DEFENDANTS.             )
```

FIRST AMEDED COMPLAINT

Plaintiffs, Brothella Quick, BQ Enterprises, Inc., and Crystal Clear Compassionate Care, Inc., by and through its undersigned attorneys, Loevy & Loevy, hereby submits this complaint against Defendants Illinois Department of Financial and Professional Regulations, Brett Bender, Deputy Director of Medical Cannabis, and As Yet Unknown Defendants. In support of the relief requested herein, Plaintiffs state as follows:

Introduction

1. In 2014, the Generally Assembly passed a law to award licenses to a limited number of companies to sell medical marijuana in Illinois. Called the "Compassionate Use of Medical Cannabis Act" (the "Act"), the law created for the first time in Illinois a system of licensing dispensaries through which it

would be legal to sell marijuana to patients suffering from conditions that are alleviated by marijuana (the "Compassionate Use Program" or "Program"). The Act places the Illinois Department of Financial and Professional Regulation ("IDFPR" or "Department") in charge of the licenses.

2. The Act created licenses for 60 medical marijuana dispensaries, and required IDFPR to award all 60 of them if there were 60 qualified applicants. If there were more than 60 qualified applicants, the Act required the Department to make awards using a competitive grading process.

3. Because there were only 60 licenses for the entire state, the licenses were valuable. In the years that followed, recipients of the licenses have sold their dispensaries for substantial sums.

4. Because over 200 companies submitted an application for the licenses before the deadline in 2014 ("applicant"), the Department used a competitive scoring process for some of the licenses.

5. Crystal Clear Compassionate Care, Inc. ("CCCC") was a qualified applicant, but it did not achieve the highest score in the district where its proposed dispensary was located. Accordingly, it was not awarded a dispensary registration.

6. Plaintiff, BQ Enterprises, Inc. was an applicant owned by Plaintiff Brothella Quick (together, "BQ"). BQ was a qualified applicant but it did not achieve the highest score in the district where its proposed dispensary was located. Accordingly, it was not awarded a dispensary registration.

7. Although many of the companies that participated in the competition were of diverse ownership (owner groups consisting of women, first generation immigrants and people of color), the Department almost exclusively selected companies that had white men as the majority owners. For some of these companies, at least five, the winners received their licenses because they were allowed to change their dispensary addresses after the application deadline, and before registering, so that the company could qualify to register.

7. These companies were permitted to change the location of their proposed dispensary even though location was one of the bases upon which the scores were awarded. Absent the change, the companies' proposed locations would not have qualified under the Act and they would not have been allowed to register a dispensary.

8. For example, the company that beat CCCC in District No. 48, The Herbal Care Center, a/k/a Custom Strains LLC ("THC"), received the high score in District 48 but applied with property that did not meet the zoning requirements of the Act. After the application period closed, and after the applications were graded, THC identified a new property with an address that would allow it to qualify under the Act.

9. IDFPR allowed THC to change its address, even though there was no formal procedure allowing an applicant to make such a change and even though the application rules required all applicants to supply the address of the proposed dispensary in the initial application. THC was allowed to register as a

dispensary in District No. 48 only because it later identified qualified property in District No. 48, after the close of the application grading period.

10. CCCC's and BQ's respective applications were compliant with all requirements, and each has now identified qualified property in a district with an available license, *i.e.*, a district where no other applicant has to date sought to register.

11. Accordingly, each wrote IDFPR to request the opportunity to change their proposed dispensary locations (as THC did), supplying all necessary information.

12. However, by letters dated November 6, 2019, the IDFPR announced its decision not to allow CCCC or BQ to change their addresses, even though it allowed THC, and other companies, to do so.

13. CCCC and BQ bring this action for two related reasons. First, there was no valid basis to refuse their requests. Among other reasons why its refusal was improper, the IDFPR relied on a rule which (a) does not foreclose the change BQ requested, (b) was enacted after BQ and CCCC submitted their original applications and (c) did not even justify the ad hoc decisions to allow the other companies to change their addresses, as it postdated those decisions by more than a year.

14. Second, the IDFPR has misapplied the Act in a manner which violates the law and deprives Plaintiffs of their due process protected entitlement to a license. As a qualified applicant with property for a dispensary in an open district, BQ and CCCC have an expectancy of receiving the license because the

4

Act by its plain terms requires IDFPR to award as many of the 60 licenses as there are qualified applicants with property.

15. IDFPR has awarded only 55 of the 60 required licenses based on a misapplication the Act. In particular, it divided the state into various districts and allocated amongst them the 60 licenses it would award. In the over 200 applications, there were five allocated licenses in districts for which no company submitted an application proposing property in the district. As a result, IDFPR did not award these five licenses.

16. BQ obtained property and approved zoning for a dispensary in one of these five districts, and, on September 25, 2019, requested to change the address in their application to this new location, just as the IDFPR had allowed the five other companies to do to obtain their licenses. Also just like those companies, BQ made the request after the application period was closed and before any new application period was announced. (Indeed no new application period has been announced as of the filling of this suit). The IDFPR denied BQ's request in a letter dated November 6, 2019.

16. CCCC obtained property and approved zoning for a dispensary in one of these five districts, and, on September 25, 2019, requested to change the address in their application to this new location, just as the IDFPR had allowed the five other companies to do to obtain their licenses. Also just like those companies, CCCC made the request after the application period was closed and before any new application period was announced. (Indeed no new application period has been announced as of the

5

filling of this suit). The IDFPR denied CCCC's request in a letter dated November 6, 2019.

17. In denying CCCC's and BQ's respective requests to change its address, IDFPR justified its decision based on an inapplicable rule, 69 Il. Admin. Code 1290.140(a). The rule, as enacted in 2014, governed changes of address by an existing, registered dispensary – providing for shutting down existing operations and moving to a new location. The rule was amended in 2018 to provide for changes of address by both registered dispensaries and applicants that have received an authorization to register but are not yet registered. This amendment occurred approximately three years after IDFPR allowed all of the aforementioned companies to change addresses and/or districts, meaning that it is not the provision under which IDFPR allowed those changes. Rather those changes were allowed, if at all, pursuant to other rules or the inherent powers of the agency, meaning that Section 1290.140(a) provides no justification for treating BQ differently.

18. Moreover, nothing in the rule forbids the change CCCC and BQ requested as an original applicant that has yet to receive an authorization to register, just as nothing in the 2014, pre-amended, version of the rule forbade IDFPR to allow address changes by original applicants that had not yet registered. Both are outside of the respective versions of 1290.140(a).

19. Moreover, IDFPR's reason for the differential treatment, which is that the other companies sought to change addresses within a district instead of between districts, is

6

legally insufficient, and in fact contradicts the express requirements of the Act.

20. First, when the IDFPR allowed the other companies to move their addresses there was no rule limiting such moves to within a district, and there is still no such rule. These address change allowed these companies to qualify to register a dispensary in the district where they moved, and they would not have otherwise qualified for the license they received.

21. Second, the districting system itself was a choice by the agency, not found within the Act. It cannot be used to justify awarding less than 60 licenses if there are applicants with qualified property. BQ and CCCC are each an applicant with qualified property, and the award of one of the five remaining licenses to each of them is thus mandatory under the Act. 410 ILCS 130/115 ("The Department of Financial and Professional Regulation may not issue less than 60 licenses if there are qualified applicants who have applied with [IDFPR].").

22. Third, no applicant previously sought a license for the districts where BQ (District No. 23) and CCCC District No. 28), respectively, have obtained an address. Each is the first, and only, applicant to present qualified property to IDFPR in that district, respectively.

23. Plaintiffs request nothing more than the same treatment afforded to the companies that were allowed to change addresses in order to qualify for a license. There is no basis in law preventing them from obtaining the same highly-valuable benefits

that those companies received as a result of moving their address, and, in fact, due process requires it.

## Jurisdiction and Venue

24. This court has jurisdiction pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367 as Plaintiffs bring a federal claim arising under the United States Constitution as well as a state law claim so related as to form part of the same case or controversy. Venue is proper as the events giving rise to these claims occurred in this district, the Plaintiffs reside in this district and the agency Defendant maintains its offices in this district.

## The Plaintiffs

25. CCCC was created by two African American women, Crystal Anderson and Maria Davis. Both have long careers as licensed Nurse Anesthetists working with patients in Illinois. From their experience they recognized the need for for alternative treatment options for Illinois patients for health conditions ranging from pain control to anxiety, to life threatening illnesses such as cancer. They teamed up to found CCCC believing both their professional expertise and the diversity the offered as women of color would be a benefit to Illinois' burgeoning medical marijuana program.

25. After much work and expense, Ms. Anderson and Ms. Davis were able to obtain property in District No. 48 and to prepare a 100+ page application, employing their own skills, as well as those of architects, security professionals, consultants and others. They timely submitted CCCC's application to IDFPR, before the deadline, in September of 2014.

8

26. BQ was created Brothella Quick, an African American woman and longtime healthcare entrepreneur with a degree in nursing from Howard University and a distinguished record of working in the public health, including serving as a 2nd Lieutenant in the United States Public Health Service. From this experience she recognized the need for alternative treatment options for Illinois patients for health conditions ranging from pain control to anxiety, to life threatening illnesses such as cancer. After much work and expense, Ms. Quick was able to prepare a 100+ page application, employing her skills, as well as those of architects, security professionals, consultants and others. She timely submitted the application to IDFPR, before the deadline, in September of 2014.

26. IDFPR disqualified numerous applicants because they failed to comply with various requirements of the Act and rules, and/or failed to achieve minimum criteria in each category.

27. BQ was not disqualified. Rather, IDFPR reviewed and scored BQ's application, but awarded the license to another applicant because it was the high scorer in the district for Evanston, where BQ had property.

27. CCCC was not disqualified. Rather, IDFPR reviewed and scored CCCC's application, but awarded the license to another applicant because it was the high scorer in the district for Evanston, where CCCC had property.

### The Licensing Process

27. In order to be considered for a license, applicants had to qualify by complying with various requirements of the Act,

9

rules, and mandatory criteria. The applicants that failed the mandatory criteria were disqualified. 69 Il. Admin. Code 1290.60. The Department sent notice informing those applicants that they had been disqualified.

28. The remaining, qualified applicants could become entitled to a dispensary license in one of two ways. First, if the number of qualified applicants with an address in a given district was less than or equal to the number of licenses IDFPR allocated to that district, then the applicant was entitled to a license. Id. § 1290.60(e).

29. However, if the number of applicants with an address in the district exceeded the allocated licenses, then the IDFPR would use a scoring process to select the winner. Id.

30. The district for Evanston, where BQ had its application address, had enough qualified applicants to trigger the scoring process. District No. 23 did not.

31. District No. 48, where CCCC has its application address, had enough qualified applicants to trigger the scoring process. District No. 28 did not.

District/Address Changes

31. After the application deadline, IDFPR allowed at least two applicants to change the district in which they applied to one where they had compliant property. The Department did so despite the fact that there was no rule specifically providing for such changes.

32. After the application deadline, IDFPR allowed at least three additional applicants to change the address for the proposed dispensary in their applications.

33. For example, THC obtained the highest score in the District No. 48 competition, meaning it would be entitled under to register under § 1290.60(e) in District No. 48 if it had compliant property.

34. But the property address that THC used in its application did not receive zoning to operate a dispensary, thereby making it ineligible under the requirements of the Act. THC then found a new address, after the results of the competition were announced, which would comply with the Act.

35. Thereafter THC obtained new property that met the requirements of the Act. IDFPR had no rule specifically allowing an applicant to change addresses prior to registration, yet it allowed THC to change to that new address even though the application period had closed. It similarly allowed at least four other applicants to change addresses under analogous circumstances.

### Differential Treatment of CCCC and BQ

36. Like THC and other companies, CCCC and BQ obtained compliant property after the application period had closed: specifically, property in District Nos. 28 and 23, respectively. Also like these companies, and those allowed to switch districts to a district where they had compliant property, BQ and CCCC, were qualified applicants that submitted an application during the open application period before the deadline in 2014. Like

11

these other companies, reviewers did not disqualify either CCCC or BQ.  Like these other companies, CCCC and BQ sought to change to a new address after the application period had closed.

37.  Unlike with the companies that changed their application district, and unlike with the companies that changed their addresses, IDFPR refused to allow CCCC or BQ to change. This refusal was without basis in law, and cannot stand.

### BQ and CCCC Have Vested Rights To The Registrations

38.  BQ is the only qualified applicant that timely applied (before 3 p.m. on September 22, 2014) for licensure under the Program, that satisfied the mandatory criteria, and that has submitted paperwork to IDFPR establishing a compliant address in District No. 23.

38.  CCCC is the only qualified applicant that timely applied (before 3 p.m. on September 22, 2014) for licensure under the Program, that satisfied the mandatory criteria, and that has submitted paperwork to IDFPR establishing a compliant address in District No. 28.

39.  No qualified applicant other than BQ has ever requested IDFPR to authorize it to register in District No. 23.

39.  No qualified applicant other than CCCC has ever requested IDFPR to authorize it to register in District No. 28.

40.  Upon submitting the paperwork, and upon being the only qualified applicant seeking registration in District No. 23, BQ obtained vested rights to the one license allocated there.

41.  These rights cannot be divested even if the IDFPR attempts to open a new application period for Districts 23 or 28

or otherwise attempts to accept later-submitted paperwork from a 2014 applicant seeking to move addresses.

## COUNT I – Administrative Review

42. Plaintiffs reallege all allegations of this complaint as if fully set out herein.

43. On or about November 6, 2019, IDFPR made final administrative decisions affecting Plaintiffs' rights. A copy of this decisions are attached hereto.

44. The court should review the decisions because they are not in accordance with the law, *inter alia*, for the reasons explained in this complaint.

45. IDFPR is requested to file an answer to this Complaint consisting of the administrative record of the proceeding resulting in the decisions (as redacted to protect CCCC's and BQ's trade secrets).

46. Plaintiffs have exhausted all available remedies under the Administrative Review Law and has no further plain, speedy, adequate remedy under the law.

WHEREFORE, Plaintiffs demands an injunction or order prohibiting the Defendants Illinois Department of Financial and Professional Regulation and Brett Bender and As Yet Unknown Defendants from awarding the registration or authorization for registration for District Nos. 23 or 28 to any applicant or person other than Plaintiffs and require Defendants Illinois Department of Financial and Professional Regulation and Brett Bender and As Yet Unknown Defendants to issue Plaintiffs authorization to register and/or a registration for a dispensing

organization at Plaintiffs' chosen addresses in Districts 23 and 28. Plaintiffs further demand their costs and attorneys fees and all other relief to which they may be entitled.

## COUNT II – 42 U.S.C. § 1983

47. Plaintiffs reallege all allegations of this complaint as if fully set out herein.

48. By all of the above, Defendants, and each of them, have deprived Plaintiffs of rights under the United States Constitution including, without limitation, rights to property protected by due process of law.

49. Plaintiffs have been injured as a direct and proximate result.

50. Plaintiffs are entitled to compensatory damages and injunctive damages including, without limitation, issuance of dispensary organization licenses/registrations under the Act and/or an order prohibiting the issuance of a license/registration in District Nos. 23 and/or 28 until Plaintiffs' rights can be fully and finally adjudicated by the agency and/or this court and/or by all available courts of appeal.

WHEREFORE, Plaintiffs demand an injunction or order prohibiting the Defendants Illinois Department of Financial and Professional Regulation and Brett Bender and As Yet Unknown Defendants from awarding the registration or authorization for registration for District No. 23 to any applicant or person other than Plaintiffs and requiring Defendants Illinois Department of Financial and Professional Regulation and Brett Bender and As Yet

14

Unknown Defendants to issue Plaintiff authorization to register and/or a registration for a dispensing organization at Plaintiffs' chosen address in District No. 23. Plaintiffs further demand their costs and attorney's fees and all other relief to which they may be entitled.

JURY TRIAL DEMANDED

Plaintiffs demand trial by jury on all issues so triable.

                                    RESPECTFULLY SUBMITTED,

                                    /s/Jon Loevy

Jon Loevy
Michael Kanovitz
Loevy and Loevy (41295)
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607

15