IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BROTHELLA QUICK, et al.,** | |
| **Plaintiffs,** | |
| v. | Case No. 19-cv-7797 |
| **ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, et al.,** | Judge Mary M. Rowland |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Plaintiffs seek a license to open a medical marijuana dispensary. Their application for a license was denied and they brought suit against the Illinois Department of Financial and Professional Regulation ("IDFPR") and Brett Bender, the head of the medical cannabis program for IDFPR. Before the Court is Defendants' motion to dismiss. (Dkt. 8). For the reasons stated below, the motion [8] is granted as to Defendant IDFPR and denied as to Defendant Bender.

## BACKGROUND

Plaintiffs Brothella Quick, Crystal Anderson, and Maria Davis are three entrepreneurs who applied for dispensary licenses under Illinois' Compassionate Use of Medical Cannabis Act, 410 ILCS 130/1 *et seq.* (the "Act"). The individual Plaintiffs formed companies to hold the dispensary licenses: BQ Enterprises Inc., for Ms. Quick, and Crystal Clear Compassionate Care Inc., for Ms. Anderson and Ms. Davis. Plaintiffs' briefing notes the relevant experience in the healthcare industry for each

1

Plaintiff. Each individual Plaintiff identifies as an African American woman, and Plaintiffs assert that African American women were, as a group, "entirely excluded from program [sic] when IDFPR awarded the licenses." (Dkt. 15, 3).

According to Plaintiffs, the Act authorized up to 60 licenses for dispensaries, and the Act *obligated* IDFPR to issue as many licenses as there are qualified applicants. 410 ILCS 130/115(a). The Act states:

> The [IDFPR] may not issue less than the 60 registrations if there are qualified applicants who have applied with the [IDFPR]. The organizations shall be geographically dispersed throughout the State to allow all registered qualifying patients reasonable proximity and access to a dispensing organization.

410 ILCS 130/155(a). The Act does not specify the process for geographically distributing dispensary locations but authorized IDFPR to adopt rules and procedures for applicants and for geographic diversity.

IDFPR created a plan to distribute 60 licenses among 43 districts. 68 Ill. Adm. Code § 1290.20. More populous districts received multiple licenses, while other districts received only one. *Id*. Pursuant to the newly promulgated rules, IDFPR required applicants to pick one of these districts for each application. 68 Ill. Adm. Code § 1290.50(a). Applicants were also required to prove that they controlled compliant property in the specified district. 68 Ill. Adm. Code § 1290.60(a) (16-17, 19). Defendants note that, pursuant to their rules, applicants could submit one application per district and could submit separate applications for up to five districts. 68 Ill. Adm. Code § 1290.40(a)(3), (5), (6). If more than one separate application was submitted, the applicant was required to pay the application fee for each submission

and comply with all other requirements for each submission. *Id*. Once an applicant was selected to receive a license, they were further required to complete a registration process. 68 Ill. Adm. Code § 1290.100. IDFPR rules allowed for a registered dispenser to relocate to another location within the same district, if IDFRP approved the move. 68 Ill. Adm. Code § 1290.140(a).[1]

Applicants received a license in a specified district in one of two instances. First, if the number of qualified applicants did not exceed the number of allocated licenses, then each qualified applicant would receive a license. (Dkt 5 ¶¶ 28-29); 68 Ill. Adm. Code § 1290.40(a)(11). For those districts with more qualified applicants than licenses, the IDFPR would hold a competition based on a points-scoring process. *Id*.

Plaintiffs allege that they timely completed their applications before the September 22, 2014 deadline, and their applications complied with all of the Act's requirements. (Dkt. 5 ¶ 36). IDFPR completed its scoring process and announced licenses in 2016. Plaintiffs did not receive a license. (*Id*. at ¶¶ 5-6). Plaintiffs first allege that the district and scoring process "proved problematic." (Dkt. 15, 4). They claim that there were many diverse applicants like Plaintiffs who did not receive a license: "It is a matter of public record that IDFPR's process resulted in almost all of the licenses going to companies majority-owned by white men." (*Id*.; Dkt. 5, ¶ 7).

Second, Plaintiffs claim that IDFPR did not award all 60 licenses; it only issued 55. (Dkt. 5, ¶ 15). In four of the districts, no qualified applicants submitted

---

[1] IDFPR amended this rule in 2019 to allow dispensers who had not yet registered to seek relocation. (Dkt. 9, 7).

3

information confirming control of compliant property, and for one of the districts, there were fewer qualified applicants than allotted licenses. (*Id*.). Plaintiffs allege that IDFPR's failure to issue at least 57 licenses is a violation of the Act, because there were at least two additional qualified applicants, the Plaintiffs, beyond the 55 that the IDFPR selected. (Dkt. 5 ¶ 16). IDFPR rules provide for such a scenario, stating: "If the Division determines that a District has no qualified applicants or fewer qualified applicants than authorized registrations, the Division shall post a notification on the Division's website detailing the dates of the next open application period." 68 Ill. Adm. Code § 1290.4(a)(13). Based on this rule, Plaintiffs waited for IDFPR to announce a new application period. As of the date of Plaintiffs' brief, IDFPR had not yet posted a notification for how it intended to award the additional five licenses.

In 2019, Illinois passed a law giving special rights to the holders of the 55 medical marijuana licenses. Each license holder would automatically receive two additional licenses; one to sell recreational cannabis at the same location as the medical dispensary, and one to open another recreational cannabis dispensary at a site of their choosing. 410 ILCS 705/15-15, 15-20. The license holders had 60 days to complete the necessary paperwork to receive this benefit. Afraid of missing this additional benefit, both BQ Enterprises and Crystal Clear obtained property in a district where there were no qualifying applications during the 2014 application period. Plaintiffs then filed paperwork to change the address of their proposed dispensaries on their 2014 application to new properties situated in one of the five

4

districts in which a dispensary has not been licensed. On November 6, 2019, IDFPR issued a letter refusing to allow Plaintiffs to change the address on the grounds that there was no open application period at that time. All parties acknowledge that this letter was likely written by Defendant Bender. (Dkt. 16, 10).

Plaintiffs claim that IDFPR treated Plaintiffs differently than (at least) five other applications who had received licenses.[2] According to Plaintiffs, "[a]t least five of those [55 original winning applications] became eligible for a dispensary license only because IDFPR allowed them to change the address proposed dispensary location." (Dkt. 5 ¶ 7). Plaintiffs claim that at least three companies were allowed to change to a new address within the district in which they applied, and two were allowed to change to new districts. (*Id*. at ¶¶ 31-35). Notably, Plaintiffs claim that IDFPR allowed these changes *after* the deadline for submission of the applications. (*Id*.). The crux of Plaintiffs' allegations is that IDFPR Plaintiffs are entitled to a license because IDFPR was required to issue all 60 licenses.

Defendants contest whether Plaintiffs were indeed qualified applicants entitled to a license, claiming that Plaintiffs did not comply with IDFPR's stated rules. IDFPR maintains that its rules did not permit Plaintiffs to change locations without filing another application during an open application period. As noted above, there has not been an open application period since the original 2014 period. And for the 2014 application period, Plaintiffs did not file an application in the new district

---

[2] Plaintiffs' Complaint and brief often sounds in a denial of equal protection. In the joint status report Plaintiffs indicate they intend to file a motion to amend their Complaint to add additional Plaintiffs and an equal protection claim. (Dkt. 26, 2). Without objection, the Court grants Plaintiffs leave to amend their Complaint.

5

and did not pay the separate application fee. (Dkt. 16, 9) ("They did not apply for, or pay the application fee for, the districts they are now seeking years later, and there has been no subsequent active application round at any time relevant to the complaint."). IDFPR additionally notes that the applicants identified by Plaintiffs who were permitted to change locations were in the process of registering their licenses. (Dkt. 9, 7). The IDFPR rules concerning license holders allowed relocation during the registration process. Plaintiffs, on the other hand, did not yet have a license and thus could not seek relocation under those rules.

Plaintiffs sue seeking administrative review of IDFPR's November 2019 decision in Count I and bring a § 1983 procedural due process claim[3] in Count II.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the Plaintiff's complaint and must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)). However, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

---

[3] The Court assumes Plaintiffs are challenging a failure to provide procedural due process as opposed to substantive due process.

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate…." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendants moved to dismiss on several grounds: sovereign immunity for IDFPR, qualified immunity for Bender, lack of a property interest in the license, and that administrative review is not available. The Court shall address each argument in turn.

**1. Property Right**

Defendants argue that Plaintiffs do not have a property right in a license. "[T]he Fourteenth Amendment of the Constitution of the United States… provide[s] that a person shall not be deprived of life, liberty, or property without due process of law." *Dargis v. Sheahan*, 526 F.3d 981, 989 (7th Cir. 2009) (citations omitted); *see also*

7

*Residences at Riverbend Condominium Assoc. v. City of Chi.*, 5 F.Supp.3d 982, 985-86 (N.D. Ill. 2013). "To determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Simply put, "the threshold question in any due process challenge is whether a protected property or liberty interest actually exists." *Citizens Health Corp v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013); *see also Jackson v. City of Chicago*, 363 Ill. Dec. 351, 368 975 N.Ed.2d 153, 170 (1st Dist. 2012) ("The threshold question in analyzing whether a procedure violates due process is 'whether a constitutionally protected liberty or property interest is at stake.'") (citation omitted).

Plaintiffs claim that Defendants violated their protected property interest in a license. "A protected property interest is a legitimate claim of entitlement—not defined by the Constitution—but 'by existing rules or understandings that stem from an independent source such as state law.'" *Residences at Riverbend*, 5 F.Supp.3d at 986 (citing *Roth*, 408 U.S. at 577); *see also Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chi.*, 357 Ill.Dec. 520, 525, 963 N.E.2d. 918 (Ill. 2012) ("Of course, the federal Constitution does not create property interests."). "To maintain a claim of property over a government-issued benefit, such as a license or permit, a plaintiff must show she has 'a legitimate claim of entitlement to it' rather than a 'unilateral expectation to it.'" *Dyson v. City of Calumet City*, 306 F.Supp.3d 1028, 1041 (N.D. Ill. 2018) (citing *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir.

8

2016). More specifically, "where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement." *Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 851 (7th Cir. 2012); *see also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("A property interest of constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the plaintiff cannot be denied the interest 'unless specific conditions are met.'").

Plaintiffs allege that they have a property interest in a license because they are qualified applicants, they have compliant property in a district with an available license, and they are the only party who meets that criteria for a district with an available license. They argue that the Act's mandatory language—IDFPR "may not issue less than 60 registrations if there are qualified applicants"—is the type of nondiscretionary system that creates a valid entitlement. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910 (1989) ("the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest"); *Kim Contsr. Co v. Bd of Trustees of Vill. of Mundelein*, 14 F.3d 1243 (7th Cir. 1994) (holding that *Thompson*'s principles apply to property interests). Defendants disagree, arguing that Plaintiffs ignore the rules promulgated under the Act. Those rules require applicants to apply to separate districts, pay for each

9

application, and permit IDFPR to use a competitive scoring system when more than one applicant applies for a license. 68 Ill. Adm. Code § 1290.40(a)(6).

The Court is persuaded that Plaintiffs have alleged a property interest in the license. Defendants' arguments are better suited for summary judgment. Accepting Plaintiffs' allegations as true and construing the facts in the light most favorable to Plaintiffs as we must at this stage, Plaintiffs have sufficiently alleged a nondiscretionary system providing for a valid entitlement. They have further alleged that they have met all predicate requirements for a license: they hold compliant property, they are qualified applicants, and there are no other qualified applicants for their requested districts. At this early stage, Plaintiffs' claim may proceed.

To state a procedural due process claim, plaintiffs must allege (1) the deprivation of a protected interest, and (2) insufficient procedural protections in effectuating that deprivation. *Zumo v. City of Chi.*, 345 F.Supp.3d 995, 1005-06 (N.D. Ill. 2018) (citing *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008)). Plaintiffs have alleged a protected property interest and that Defendants denied them the protected interest in refusing to grant them a license and refusing to allow them to change locations. They have further alleged insufficient procedural protections and that IDFPR has refused to open a new application period for over five years.

**2. Sovereign Immunity**

Plaintiffs' Complaint brings two counts against both defendants, IDFPR and Bender. Count I is for state law administrative review and Count II is for a violation

10

of due process under 42 U.S.C. § 1983. Both counts seek only injunctive relief. Defendant IDFPR argues that it is immune from suit under the Eleventh Amendment.

### a. IDFPR

In general, a state is immune from suits brought by individuals in federal court. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.E.2d 662 (1974)). However, a state's sovereign immunity is not absolute. *Id*. "In some cases, a suit against a state or its officials may proceed despite the Eleventh Amendment's proscription." *Id*. For example, a "state may waive the protections of the amendment and consent to suit in federal court, or Congress may use enforcement powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993).

Defendants argue that the § 1983 claim in Count II cannot be brought against IDFPR. (Dkt. 9, 10; Dkt. 16, 1). Plaintiffs fail to respond. Count II requests relief under § 1983. Section 1983 authorizes suits against a "person" who acts under color of state law and deprives another person of his or her rights. 42 U.S.C. § 1983. "[A]s a state agency protected by Eleventh Amendment sovereign immunity, the [IDFPR] is not a 'person' who can deprive a party of its rights, privileges or immunities under § 1983." *Illinois Dunesland Preservation Society v. Illinois Dept. of Natural Resources*, 461 F.Supp.2d 666, 670 (N.D. Ill. 2006) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a

11

State nor its officials acting in their official capacities are 'persons' under § 1983.")). Accordingly, Plaintiffs cannot bring a § 1983 claim against IDFPR, and IDFPR must be dismissed from Count II, with prejudice. *Dunesland*, 462 F.Supp.2d at 671 (dismissing state agency from § 1983 suit because "there is no support for the proposition that claims for injunctive relief may be brought under § 1983 against state agencies").

Whether IDFPR can be named in Count I, a claim brought under the Administrative Review Law, is a bit trickier. Plaintiffs argue that they may bring a claim for injunctive relief against a state agency under administrative review. (Dkt.15, 12). Plaintiffs claim that there is "no Eleventh Amendment impediment to federal courts issuing [injunctive] relief against a state agency," and cite to *Ex Parte Young* and *Kroll* in support. (*Id.* at 13). Defendants correctly point out that these cases involve official capacity suits against state officials, not state agencies. The Supreme Court has clarified that the *Young* "exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the *states and their agencies*, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 604 (1993) (emphasis added) (internal citations omitted). Indeed, other courts to have addressed the issue hold that individuals may not sue state agencies for injunctive relief in federal court. *See, e.g., Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 32 (2d Cir. 1991) (dismissing state agency from

12

claim for injunction relying on *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 102 (1984) "a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state and any funds required to be expended by an award of prospective relief will come from the state's treasury"); *Moore v. Louisiana Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (dismissing two state agencies from suit for injunctive relief relying on *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55 (1996) and *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) finding "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it. … Despite this bar, a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution. … Only state officials, not state agencies, may be enjoined.); and *General Motors Corp. v. California State Bd. of Equalization*, 815 F.2d 1305, 1309 (9th Cir. 1987) ("The eleventh amendment does not bar actions for injunctive relief against individual state officials, but it does bar such action against the state or its agencies, absent their consent.") (citing *Alabama v. Pugh*, 438 U.S. 781, 57 L.Ed.2d 1114, 98 S.Ct. 3057 (per curiam)).

Plaintiffs correctly assert that the court in *Petroff Trucking Co. v. Illinois Dep't of Transp.*, No. CIV. 11-241-GPM, 2011 WL 6026108, at *4 (S.D. Ill. Dec. 2, 2011) held that "the Eleventh Amendment does not preclude a suit for prospective relief against

13

a state, its agencies …." With respect, the cases relied on by the *Petroff* court do not support that proposition. *Edelman v. Jordan,* 415 U.S. 651, 663–64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)(lower court erred in holding *Young* allowed retroactive payments characterized as "equitable restitution"); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (the exception to Eleventh Amendment immunity carved out in *Ex Parte Young* is that *state officials* may be sued in their official capacity for injunctive relief against violations of federal law; it does not allow for suits against the state); *Ameritech Corp. v. McCann,* 297 F.3d 582, 585–86 (7th Cir. 2002) (suit only brought against the state official, not against the state); *Luder v. Endicott,* 253 F.3d 1020, 1024–25 (7th Cir.2001) (injunctive relief under the FLSA against the state not at issue, the court stated: "[t]he Eleventh Amendment is not limited to damages judgments. It applies to injunctive suits, as well, against the states.").

In *Benjamin v. Illinois Dep't of Fin. & Prof'l Regulation*, 837 F. Supp. 2d 840, 852 (N.D. Ill. 2011), the court also held, that "[b]ecause the Eleventh Amendment does not foreclose claims for injunctive relief (and plaintiff requests injunctive relief here), plaintiff's Ethics Act claims based on plaintiff's request for injunctive relief survive against IDFPR …" But again, with respect, there was no further analysis.

Contrary to Plaintiffs' assertion, it is irrelevant whether administrative review is equitable in nature given that the *Ex Parte Young* exception does not apply to state agencies. Plaintiffs cannot seek an injunction against IDFPR in federal court whether

14

under § 1983 or administrative review. Accordingly, IDFPR is dismissed from this suit.

### b. Bender

A suit against state officials may proceed in the limited circumstances identified by *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "Under *Young*, state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages." *MSA Realty*, 990 F.2d at 291; *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999) ("Under the longstanding doctrine of *Ex Parte Young*, a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law."). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm. of Maryland*, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-69, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

Defendant Bender fits squarely within the *Young* exception. Bender is a state official sued in his official capacity. (Dkt. 15, 15). Plaintiffs clarified that they do not seek any damages from Bender in his official capacity, only injunctive relief. (*Id.*). That Plaintiffs' complaint alleges an ongoing violation of federal law—Defendants' violation of due process—is beyond dispute. Plaintiffs' requested relief is "properly characterized as prospective." *Ameritech Corp.*, 297 F.3d at 587. Count I seeks a

declaration that Bender improperly refused to award Plaintiffs a license, and Count II seeks an injunction prohibiting Bender from awarding any other applicant a license for the Plaintiffs' requested districts. Count I and Count II are thus properly characterized as prospective and properly brought against Defendant Bender.

### 3. Qualified Immunity

Defendants next argue that Bender is entitled to qualified immunity. Both parties agree that Bender would only be entitled to qualified immunity for damages in his individual capacity, not for claims of official capacity injunctive or declaratory relief. It is unclear whether Plaintiffs intend to sue Bender both in his official capacity and in his individual capacity. Regardless, at this stage in the litigation, the Court declines to find that qualified immunity warrants dismissal.

Qualified immunity protects officials from civil liability stemming from discretionary functions, but only if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Siliven v. Ind. Dep't of Child. Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172, L.Ed.2d 565 (2009)). The Seventh Circuit has noted that "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (noting that immunity defense depends on facts that plaintiffs need not plead in anticipation of the defense).

To survive a motion to dismiss in the face of a qualified immunity defense, the Complaint must plausibly allege that Bender violated Plaintiffs clearly established

16

rights by denying them a license. Again, the Court is not only required to take the facts alleged in the Complaint as true, but also to draw all reasonable inferences in Plaintiffs' favor. The Court has already determined that Plaintiffs have alleged a deprivation of a constitutional right. Accordingly, the Court finds that Plaintiffs have satisfied this standard. Because the Court cannot find at this stage that Bender's conduct was protected by the doctrine of qualified immunity, the motion to dismiss on that basis is denied.

**4. Administrative Review**

Finally, Defendants argue that the administrative review claim in Count I is not available. Generally, administrative review is only available when the relevant section of a statute expressly adopts the Administrative Review Law for that particular section. *See Bd. of Educ. of Woodland Community Consol. School Dist. 10 v. Ill. State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 38. Defendants claim that the Act only allows for administrative review of Section 130, which concerns disciplinary actions for those who hold a license. (Dkt. 9, 12). Plaintiffs counter that the Section 130 provides for administrative review of much more. Section 130 states: "[IDFPR] may revoke, suspend, place on probation, reprimand, *refuse to issue* or renew, or take any other disciplinary *or non-disciplinary action* as [IDFPR] may deem proper…. *All* final administrative decisions of [IDFPR] are subject to judicial review under the Administrative Review Law and its rules." 410 ILCS 130/130(n) (emphasis added).

17

In *City of Chicago v. Int'll Coll. of Surgeons*, 522 U.S. 156, 164 (1997), the Supreme Court addressed whether a federal court had jurisdiction over claims arising under Illinois' Administrative Review Law. The Court determined that federal courts have supplemental jurisdiction over administrative review claims when the agency's action gives rise to constitutional claims over which there is original jurisdiction. *See Petroff Truck Co. v. Ill. Dep't of Transp.*, No. CIV 11-241-GPM, 2011 WL 6026108, at *1 (S.D. Ill. Dec. 2, 2011) (finding supplemental jurisdiction over administrative review claim). This is precisely the situation here.

The Court is accordingly persuaded that administrative review is available in this case. Bender's motion to dismiss on this basis is denied.

## **CONCLUSION**

For the reasons stated herein, Defendants motion to dismiss [8] is granted in part and denied in part. Defendant IDFPR is dismissed from this suit, Bender's motion to dismiss is denied.

E N T E R:

Dated: June 23, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge