IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROTHELLA QUICK, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 19-cv-07797 |
| MARIO TRETO, JR.[1] *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brothella Quick, BQ Enterprises, and Crystal Clear Compassionate Care, Inc. (CCCC) allege that officials at the Illinois Department of Financial and Professional Regulation (IDFPR) violated their right to equal protection when they did not allow them to modify their applications for a medical cannabis dispensing license. The defendants have moved for summary judgment and filed a partial motion to dismiss. For the reasons stated below, the defendants' Motion for Summary Judgment [63] is granted. The Motion to Dismiss [57] is denied as moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[1] Mario Treto, Jr. replaced Deborah Hagan as Acting Secretary of IDFPR. *See* Fed. R. Civ. Pro. 25(d).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND

Plaintiff CCCC is an Illinois company owned by two African American women, Crystal Anderson and Maria Davis. PSOF ¶ 1.[2] Plaintiff BQ Enterprises is also an

---

[2] Defendants' Rule 56.1 Statement of Facts in support of their Motion for Summary Judgment (Dkt. 65) is abbreviated "DSOF." Plaintiffs' Rule 56.1 Statement of Additional Facts (Dkt. 73) is abbreviated "PSOF." Each party responded to the others' facts. (Dkts. 72 & 83).

Illinois corporation. *Id.* at ¶ 2. It is owned by Plaintiff Brothella Quick, an African American Woman. *Id.* Defendant Deborah Hagan is the agency head of the IDFPR. DSOF ¶ 5. Defendant Bret Bender is a Deputy Director at IDFPR. *Id.* at ¶ 6. From April to December of 2019, he was in charge of the IDFPR's medical cannabis pilot program. *Id.*

**I. The Statute and Regulations**

At issue in this case is the IDFPR's implementation of Illinois's medical cannabis pilot program. As a result, it is first necessary to understand the statutes and rules that governed the program. Under the Compassionate Use of Medical Cannabis Act, 10 ILCS 130/1 *et seq.*, IDFPR is responsible for overseeing the licensure process for would-be medical cannabis dispensaries. *Id.* at ¶ 5. The Act directs IDFPR to issue 60 registrations for dispensaries throughout the state. 410 ILCS 130/115(a). It also gives the IDFPR the power to promulgate rules to govern the distribution of the registrations. 410 ILCS 130/115(b).

IDFPR put this into practice by distributing the 60 registrations among numerous geographic districts. The Department outlined a two-stage process for receiving a registration. First, a would-be dispensary would apply for an "authorization notice." 68 Ill. Admin. Code §1290.40(a)(1). If the applicant was granted an authorization, they could then submit for registration approval. §1290.40(b).

Applicants could submit one application for multiple districts, so long as they paid an application fee for each district. §1290.40(a)(5)-(6). The applications were then scored on a variety of factors including the proposed location, the business plan, and

3

the underlying financials. §1290.40(a)(6). Applicants had to meet a minimum threshold score in order to be considered a qualified applicant. §1290.40(a)(9). If there was only one qualified applicant in a district, then that applicant would receive an authorization. If, however, there were multiple qualified applicants, IDFPR would select the top score applicant to receive the authorization. §1290.40(a)(11), §1290.60. If there were no qualified applicants in a district, the Department could withhold the relevant authorization for a second round of applications to be conducted in the same manner. §1290.60(i). So far there has only been one application round, which began in 2014. DSOF ¶ 9.

If awarded an authorization, the applicant could then submit for registration approval. 68 Ill. Admin. Code §1290.40(b). This entailed submitting a registration packet containing further detailed information. §1290.100(b)(3). The department would then review the packet and could request revisions. §1290.100(c). Once satisfied with the packet, the registration would be conditionally approved, with final approval contingent on a build-out of the location and inspection by the department. §1290.100(c). The rules state that the registration would be awarded for the specific location proposed on the application. §1290.130(a). Prior to 2019, the rules also permitted registered dispensaries to move their physical location within their district. PSOF ¶ 25. In 2019, the rule was changed to explicitly allow authorized but not-yet-registered applicants to also change the location, within the district, of their proposed dispensary. §1290.140(a).

**II. The Applications**

4

In 2014, CCCC and BQ applied for medical cannabis licenses. DSOF at ¶¶ 7-8. CCCC applied for a license in District 48, while BQ applied for one in District 34. *Id*. Neither company was disqualified, but neither of them received the top score in their district. *Id*. In February and April of 2015, IDFPR awarded the authorizations to the winning applicants in each district. *Id*. at ¶ 10.

Fifty-five (55) applicants received authorizations. PSOF at ¶ 7. That left five licenses not awarded. *Id*. at ¶ 20. Forty-eight (48) of the applicants outscored other applicants in their district. *Id*. Seven (7), meanwhile, were the only qualified applicants in their district. *Id*. at ¶ 8. In their answer to the Third Amended Complaint, the defendants admitted that no minority-owned companies were among the fifty-five (55) authorized applicants. *Id*. at ¶ 4. The defendants assert that subsequent fact discovery has shown that three of the selected businesses were minority-owned. Dkt. 83 at ¶ 4.

After the IDFPR's announcement, at least twenty-one of the fifty-five authorized applicants sought and received permission from the Department to change the address of their proposed dispensary to another location within their district. PSOF at ¶ 10. Four years after the application was due, on September 25, 2019, BQ sent a letter to IDFPR requesting permission to amend its application. DSOF at ¶ 12. BQ wanted to change the location on its application from one in District 34 to a new location in District 23. *Id*. That same day, CCCC sent a letter requesting to amend the location on its application from District 48 to District 28. *Id*. at ¶ 14. At the time, there were no qualified applicants for District 23. *Id*. at ¶ 18. District 28 had two

qualifying applicants. *Id.* at ¶ 19. One was selected for authorization but later withdrew from consideration for registration. *Id.*

On November 6, 2019, Bender responded to both letters, denying the requests to amend their applications. *Id.* at ¶¶ 13, 15. Aside from the plaintiffs, no medical cannabis applicant ever requested that their proposed location be changed from one district to another. *Id.* at ¶ 17. Following Bender's denial, the plaintiffs brought the present suit alleging constitutional and state law violations.

In their Third Amended Complaint, the plaintiffs assert a state law administrative review claim (Count I); a violation of due process (Count II) and equal protection (Count III) each filed pursuant to 42 USC § 1983; and a state law equal protection claim (Count IV).[3] As to the due process claim (Count II), defendants properly assert that federal law determines whether a property interest is protectable. (Dkt. 69 at 6 citing *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756-57 (2005)). Several district courts faced with challenges to the seizure of marijuana have determined that because marijuana is contraband for any purpose under the Controlled Substances Act, 21 U.S.C. § 812(c), a plaintiff cannot have a property interest in marijuana. *Mazin v. True*, No. 14-00654, 2015 WL 1228321, at *2 (D. Colo. Mar. 16, 2015) (no property interest in seized marijuana); *River N. Props., LLC v. City and Cnty. of Denver,* No. 13 C 1410, 2014 WL 7437048, at *24 (D. Colo. Dec. 30,

---

[3] Defendants moved to dismiss Count I brought pursuant to the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq.* as barred by the Eleventh Amendment. (Dkt. 57). Although plaintiffs filed a brief in opposition to defendants' motion (Dkt. 61), plaintiffs do "not oppose dismissal of the state law claims." (Dkt. 74 at 12, fn 3). Defendants also argued Eleventh Amendment immunity bars plaintiffs' Illinois equal protection claim. (Dkt. 69 at 16). Again, Plaintiffs do not oppose dismissal of the state law claims. (Dkt. 74 at 12, fn 3). Counts I and IV are dismissed without prejudice pursuant to Fed. R. Civ. Pro. 41(a)(2).

6

2014) (same); *Barrios v. Cnty. of Tulare,* 13 C 1665, 2014 WL 2174746, at *4-6 (E.D. Cal. May 23, 2014) (same); *Schmidt v. Cnty. of Nev.,* No. 10 C 3022, 2011 WL 2967786, at *5-6 (E.D. Cal. July 19, 2011) (same).

In an unpublished Order, the district court in *Louis Del Favero Orchids, Inc. v. Scott Rivkees, et al.,* No. 19-00284 (N.D. Fla. Nov. 5, 2019), extended this principle to finding that because of the federal ban on marijuana, there is no constitutional property interest in a state issued license to operate a medical marijuana dispensary.[4] Without arguing the merits of this claim, plaintiffs agree that this claim should be dismissed. The due process claim is dismissed without prejudice. Only the federal equal protection claim remains.

## ANALYSIS

The Fourteenth Amendment "prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). In order to establish an equal protection claim, the plaintiffs must show that "they are similarly situated to another group" that was treated more favorably. *Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011).

In order "[t]o be considered 'similarly situated,' a plaintiff and his comparators . . . must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). The analysis "is not a

---

[4] This ruling is currently pending before the Eleventh Circuit. *See Louis del Favero Orchids, Inc. v. Scott Rivkees, et al.*, No. 19-14930 (11th Cir., docketed Jan. 23, 2020)

'precise formula,'" but "what is 'clear is that similarly situated individuals must be very similar indeed.'" *Id.* (*quoting McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). "Whether a comparator is similarly situated is usually a question for the fact-finder." *Id.* When, however, "it is clear that no reasonable jury could find that the similarly situated requirement has been met, a grant of summary judgment is appropriate." *Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir. 2005).

In this case, the plaintiffs have identified as comparators the 21 *authorized* applicants who moved the location of their proposed dispensary between authorization and registration. According to plaintiffs, the IDFPR's favorable treatment of these applicants contrasts with the denial of the plaintiffs' requested move. But there are two significant differences between the authorized applicants and the plaintiffs in this case. First, unlike the plaintiffs, the authorized applicants had received an authorization to apply for a registration when they requested to move. That is, they had already been selected to receive their district's license, either through a competitive process or because they were the only qualified applicant.

The second difference is that all 21 of the authorized applicants who requested to move their proposed dispensary sought to do so *within* the district for which they had applied. These two facts interact. Applicants were granted authorizations to register for a license within a particular district, and then they were allowed to change the location of their business so long as it remained in the district for which they were permitted to register. At the same time, in districts where no authorizations were

8

granted, the licenses were to be held until a second round of applications was held in the same manner as the first. 68 Ill. Adm. Code §1290.60(i).

The plaintiffs, in contrast, were not authorized, and they sought to move their locations outside of the districts to which they originally applied. If they had amended their applications to another location within their original district, it would have done them no good. The authorization for those districts had already been awarded to competitors. So, by amending their application to another district, they sought to make themselves eligible to receive an authorization that had originally gone unawarded, skipping ahead of a potential second round of applicants. Thus, the differences in authorization status and request for relocation fundamentally change the implications of the requests. The plaintiffs were in a different legal position from the comparators at the time of their requests; their requests were different in kind from the comparators; and granting them would have had a significant and disruptive impact on the IDFPR's overall licensing process.

The plaintiffs largely ignore these issues with their proposed comparators. In their briefing they assert that the authorized vs. non-authorized applicant distinction is not grounded in the statute. And they insist that moving out-of-district should be considered the same as moving in-district. But they do not dispute IDFPR's authority, granted by statute, to promulgate rules governing the application process, and they do not explain why the different licensure implications between in and out of district moves are not legally significant. The comparators in this case differ in fundamental respects from the plaintiffs. *Cf. Glaus v. Speedway Superamerica, LLC,* 5 F. Supp. 3d

9

1008, 1022 (W.D. Wis. 2014) (finding an employment discrimination claim survived summary judgment when the differences between the comparator and plaintiff were their length of service and their violation of the similar but different policies). No reasonable jury could find them "very similar" to the plaintiffs. *McDonald,*, 371 F.3d at 1002.

The plaintiffs argue that these distinctions are pretextual because the IDFPR has given shifting explanations as to why their requests were denied. Changing explanations for an action can be evidence that the given reasons are pretextual. *See de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 561 (7th Cir. 2019). In this case, however, the plaintiffs have failed to actually show shifting explanations.

To show inconsistency, the plaintiffs cite to Bender's letters denying the requested changes; the defendants' answers to interrogatories; and their argument here at summary judgment. *See* Dkts. 65-6, 8; Dkt. 73-6 at ¶ 1; Dkt. 69. A fair reading of this evidence actually shows consistency in IDFPR's reasoning. In Bender's letters, he specifically distinguishes between the plaintiffs and applicants who had been authorized. He also emphasizes that while moves within district have been permitted, "no dispensing organization was permitted to relocate or change their address outside of the District for which they applied." Dkt. 65-8 at 1. If the plaintiffs wished to apply in different districts, they would have to wait for the next application round. This explanation is the same as the one the defendants have offered at summary judgment—that the authorized applicants belonged to a legally distinct category and their requests to move to a new district were different in kind. The interrogatory

10

answer, meanwhile, is unrelated. It describes the IDFPR's legal rationale for permitting an authorized applicant to change an address *within* a district, not why the plaintiffs' requests were denied. *See* Dkt. 73-6 at ¶ 1. Although one might take issue with defendants' reading of their rules, the reasoning defendants offer is consistent with their explanations to and treatment of the plaintiffs.

The plaintiffs argue that Bender's letter is pretextual because it cites a rule, 68 Ill. Admin. Code §1290.140(a), that was amended in 2019 to explicitly permit authorized applicants to change their address within their district. But Bender cites the rule to establish that even if the plaintiffs were authorized applicants when they wrote in 2019, they would still not be permitted to transfer to *another* district. He does not suggest it justified the authorized applicants' pre-2019 location changes. IDFPRs explanations of its denial have been consistent through the years, undermining the pretext argument. Without a similarly situated comparator, the plaintiffs' equal protection claim cannot succeed. Summary judgment on plaintiffs' equal protection claim is granted.

## CONCLUSION

For the stated reasons, the defendants' Motion for Summary Judgment [63] is granted. The Motion to Dismiss [57] is denied as moot. Judgment is granted in favor of defendants on Count III. The remaining counts are dismissed without prejudice. Enter Judgment Order. Civil case terminated.

11

E N T E R:

Dated: September 28, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge